1  Joseph A. Creitz, Cal Bar No. 169552
2  Email: joseph.creitz@gmail.com
   LAW OFFICE OF JOSEPH CREITZ
3  22 Battery Street, Suite 1000
   San Francisco, CA 94111
4  Telephone: (415) 269-3675
5  Facsimile: (415) 513-4475

6
   Joseph A. Garofolo, Cal. Bar No. 214614
7  Email: erisalaw@sbcglobal.net
   LAW OFFICE OF JOSEPH A. GAROFOLO
8  22 Battery Street, Suite 1000
9  San Francisco, CA  94111
   Telephone: (415) 981-9775
10 Facsimile: (415) 981-9776
11 Attorneys for Plaintiff

12            **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15 | LENA MONZON RAMOS,                              | Case No. CV-08-1375 PJH
16 |
17 |              Plaintiff,                         |
   | vs.                                            | JOINT INITIAL CASE
18 |                                                | MANAGEMENT CONFERENCE
19 | BANK OF AMERICA, a corporation,                | STATEMENT
   | in its capacity as administrator of the        |
20 | BANK OF AMERICA LONG TERM                      | Date:        July 31, 2008
   | DISABILITY PLAN;                               |
21 | METROPOLITAN LIFE                              | Time:        2:30 p.m.
22 | INSURANCE COMPANY, a                           |
   | corporation, in its capacities as a            | Courtroom of the Honorable
23 | fiduciary and an administrator of the          | Judge Phyllis J. Hamilton
24 | BANK OF AMERICA LONG TERM                      |
   | DISABILITY PLAN; and BANK OF                   |
25 | AMERICA LONG TERM                              |
26 | DISABILITY PLAN an ERISA-                      |
   | regulated employee benefit plan,               |
27 |
28 |              Defendants.                        |

1    The Parties hereby submit the following Joint Initial Case Management Conference

2    Order:

3    1.    **Jurisdiction and Service:**

4    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the

5    Employee Retirement Income Security Act of 1974, as amended ("ERISA") sections 502(e)(1)

6    and 502(f), 29 U.S.C sections 1132(e)(1), (f), and 28 U.S.C. section 1331.

7    All Defendants have appeared, and there are no issues concerning personal jurisdiction,

8    venue, or service.

9    2.    **Facts:**

10    Plaintiff's statement:

11    Ms. Ramos is a former employee of Bank of America ("BofA").  Ms. Ramos suffers from

12    debilitating conditions including, *inter alia*, chronic asthma, congestive heart failure, mitral

13    stenosis, aortic insufficiency, and chronic migraine headaches.  Ms. Ramos has alleged that she

14    is fully disabled and entitled to long term disability ("LTD") benefits under the terms of the

15    ERISA-regulated LTD plan sponsored by BofA (the "Plan"), of which Ms. Ramos was a

16    participant.

17    Ms. Ramos' last day of work at BofA was November 11, 2004.  Metropolitan Life

18    Insurance Company ("MetLife"), as the ERISA fiduciary claims administrator and funding

19    insurer of BofA disability plans, approved Ms. Ramos' claim for short term disability benefits

20    running from November 19, 2004 through June 2, 2005.

21    On March 23, 2005, MetLife denied Ms. Ramos' claim for LTD benefits under the Plan.

22    Ms. Ramos provided additional documentation.  On June 20, 2005, MetLife issued a "final"

23    denial of Ms. Ramos' claim for LTD benefits without explaining what additional evidence would

24    have perfected her claim.  The United States Social Security Administration subsequently

25    approved Ms. Ramos' claims for social security disability benefits, finding her to be completely

26    disabled and incapable of working at any profession.

27    On or about May 30, 2007, Ms. Ramos made a request for documents to BofA in its

28    capacity as named administrator of the Plan.  Within thirty days of the request, BofA provided

1   certain Plan documents, but failed to provide the administrative record of Mr. Ramos' benefit

2   claim, or any of the other materials requested.

3       Plaintiff disagrees with numerous of the factual contentions stated below by Defendant

4   MetLife, but in particular, and without waiving any objection or agreeing to any of Defendant

5   MetLife's statements, Plaintiff notes that Defendant MetLife states "Plaintiff admits that she

6   made a request to the Plan administrator for the Plan documents, and received them." Rather,

7   Plaintiff has alleged that she requested numerous documents from the Named Plan administrator,

8   and in response, only certain Plan documents were provided.

9       Defendants' Statement:

10      Plaintiff sought LTD benefits in a claim submitted in February 2005. She was advised,

11  upon submission of her claim, that she must provide medical records to support it. She

12  responded by submitting an Attending Physician Statement ("APS") from John L. Hadley, M.D.,

13  a pulmonologist, dated March 8, 2005. In conclusory fashion, the APS described plaintiff as

14  having been diagnosed with cardiac asthma and congestive heart failure, said that she could not

15  work due to "extreme coughing and asthma attacks" that made her "unable to talk," and stated

16  that medical records were attached. No records were in fact attached.

17      MetLife contacted Dr. Hadley's office about the missing records, and was informed that

18  the records were given to plaintiff, who was to provide them. MetLife spoke with plaintiff, who

19  claimed she had sent them once and would send them again. No records were in fact received,

20  however, and the claim was therefore denied on March 23, 2005, for lack of medical support.

21  The letter reminded plaintiff that she had previously been instructed to provide all of her "office

22  notes and test results from [her] date of disability that support the stated diagnosis and

23  restrictions and limitations." The letter also informed plaintiff that once she provided the

24  requested records, her claim would be evaluated based on the records she provided.

25      On April 18, 2005, MetLife received a copy of Dr. Hadley's certification to the

26  California Employment Development Department, dated February 24, 2005, stating that plaintiff

27  had congestive heart failure and cardiac asthma, causing her to experience extreme shortness of

28  breath and asthma attacks, and a chronic cough.

On May 5, 2005, MetLife received a Supplemental APS from Dr. Hadley, dated April 29, 2005, that was virtually identical to the March 8 APS.  It referenced "records previously sent" as supporting the diagnosis.

On May 18, 2005, plaintiff appealed, and on May 19, 2005, MetLife received a duplicate copy of the March 8 APS, a pulmonary function lab report dated June 10, 2004, a single sheet of office visit notes regarding a cardiac consultation, an EKG report of November 23, 2004, and a letter dated January 24, 2005, from Dr. Hadley "to whom it may concern" that plaintiff "may qualify for permanent disability."  Upon review of the additional materials, a MetLife nurse consultant recommended referral for independent review by a cardiologist and a pulmonologist.  On May 27, 2005, the pulmonologist independent physician consultant ("IPC") opined that the records did not support the claimed inability to perform the sedentary occupation of bank operations representative.  In particular, the IPC noted that there were "no office visit notes describing the history, examination findings, treatment and response to treatment [and] no exercise testing . . . ."  The IPC opined that there was insufficient documentation to support the claimed restrictions on plaintiff's functionality.  On June 1, 2005, the cardiologist IPC opined that plaintiff's history of cardiology issues justified restrictions on strenuous exertion, lifting, climbing, exposure to dirt, dust and fumes, and activity that could cause chest trauma.  The IPC found *inter alia* that her heart condition was stable, and that there was no basis for a diagnosis of congestive heart failure.  On June 20, 2005, MetLife wrote to plaintiff and informed her that the denial was upheld, explaining that the medical information had been reviewed by MetLife and by two IPCs, but did not support plaintiff's claimed inability to perform the functions of her sedentary occupation.  The letter informed her that she had exhausted the appeal procedures.

On July 15, 2005, plaintiff wrote to MetLife and requested a copy of her claim file, as well as plan documents.  The letter was received July 22, and a complete copy of her claim file was sent on August 1, 2005.  On August 1, MetLife informed plaintiff that plan documents must be requested from the Plan's administrator, and gave her contact information.  Plaintiff admits that she requested and received the documents from the Plan administrator.

In June 2006, plaintiff contacted MetLife to "discuss claim and why it was denied" and

1    was told that denial was "due to no medical"; she replied that she sent MetLife what there was.

2    In December 2006, she called MetLife and said that she had been approved for Social Security

3    disability benefits, asking whether she could appeal her LTD denial on that basis.  She was

4    informed that she already had exhausted the appeals provided by the Plan.  This suit followed.

5    3.    **Legal Issues:**

6         Plaintiff's Statement:

7         Ms. Ramos contends that she is entitled to LTD benefits under the terms of the Plan, and

8    that the conduct of MetLife, BofA, and the Plan violate the ERISA claims regulation, 29 C.F.R.

9    section 2560.503-1, *et seq*. (the "Claims Regulation"), and violate their respective fiduciary

10   duties under ERISA.  Ms. Ramos further alleges that MetLife's benefits claim determination was

11   conducted under a conflict of interest.  *See Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343

12   (June 19, 2008) (hereinafter "*MetLife,*" except where cited by Defendants as "*Glenn.*")  Ms.

13   Ramos contends that she has exhausted her administrative remedies, or alternatively is excused

14   from exhausting her administrative remedies pursuant to 29 C.F.R. 2560.503-1(l).

15        Ms. Ramos further contends that MetLife failed to engage in a dialogue with her

16   respecting the perfection of her claim, as required by *Booton v. Lockheed Medical Ben. Plan,*

17   110 F.3d 1461, 1464 (9th Cir. 1997) (claims administrators must engage in a meaningful and

18   comprehensible dialogue with participants, and to deny a claim without obtaining adequate

19   information is an abuse of discretion)*,* the ERISA Claims Regulation, 29 C.F.R. section

20   2560.503-1(j), and otherwise.  *See also Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 538

21   (9th Cir. 1990) (burden is on plan to obtain adequate information to render a claim

22   determination).

23        Ms. Ramos further contends that the Defendants' violations of ERISA and its claims

24   regulation, along with Defendant MetLife's conflict of interest, operate, *inter alia*, to reduce her

25   burden in the instant lawsuit, and to permit the introduction into evidence of material outside the

26   administrative record of her disability claim, including but not limited to the Social Security

27   Administration's adjudication of Ms. Ramos' permanent and fully disabled status, and evidence

28   regarding the scope and effect of MetLife's conflict of interest.  *See MetLife*, 128 S.Ct. at 2351;

4

1    *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006).  The Supreme Court in

2    *MetLife*, along with the Ninth Circuit in *Abatie*, specifically mandate that trial courts must

3    consider not merely the existence of a conflict of interest, but must further evaluate (and

4    therefore allow discovery into) the extent to which that conflict had an effect on the conflicted

5    fiduciaries' claims determination.  *Id.*

6           Ms. Ramos further contends that Defendant BofA is liable to her under ERISA section

7    502(c), 29 U.S.C. section 1132(c), for statutory penalties of $110.00 per day per document

8    requested but not provided within 30 days of her May 30, 2007 document request.  *See Sgro v.*

9    *Danone Waters of North America, Inc.*, --- F.3d ----, 2008 WL 2598936 (9th Cir. July 2, 2008)

10   (imposing ERISA section 502(c) penalties against a plan administrator that failed to provide

11   benefit claim documents that had been in the custody of its claims administrator, MetLife).

12          Defendants' Statement:

13          It is at all times a participant's burden and obligation to support her claim with medical

14   proof.  *Jordan v Northrop Grumman Corp Welfare Benefit Plan*, 63 F. Supp. 2d 1145 (C.D. Cal.

15   1999), *aff'd*, 370 F. 3d 869 (9th Cir. 2004).  The Plan broadly confers discretion with regard to

16   the decision at issue.  Plaintiff contends that MetLife abused its discretion, but the administrative

17   record shows otherwise.  Plaintiff was told what type of showing was needed to substantiate her

18   claim, and MetLife also directly contacted her doctor for records that should have been provided.

19   The records it received, however, did not document a functional impairment of sufficient

20   severity to support a finding that plaintiff could not perform her sedentary occupation.  The

21   problem was not a lack of communication with plaintiff, but a lack of medical support for the

22   claimed severity of her condition.

23          In *Metropolitan Life Ins. Co. v. Glenn*, __ U.S. __, 128 S. Ct. 2343 (2008), the Supreme

24   Court provided instructions on how claim decisions under ERISA-governed plans should be

25   reviewed when, as here, the entity making the claim decision has discretionary authority under

26   the plan, and is also the entity funding benefits.  The Court held that in such circumstances,

27   claims decisions are to be reviewed under the undiluted abuse of discretion standard of review.

28   *Id.* at 2350.  In *Glenn*, the Supreme Court provided guidance to reviewing courts limiting the

effect of the "evaluator/payor conflict" emphasizing that it was "but one factor among many that a reviewing judge must take into account." *Id*. at 2351**.** *Glenn* makes clear that this structural conflict is given no more weight than any other factor in the administrative file. Given the lack of substantial support for plaintiff's claim in the administrative record, this factor should have little impact. Likewise, plaintiff's contention that this Court should lessen her burden of proof and admit evidence outside the administrative record are incorrect. First, *Glenn* rejected *de novo* review (in favor of undiluted abuse of discretion review) and "special procedural or evidentiary rules." *Id.* at 2350-51. Second, MetLife could not have abused its discretion by failing to award LTD benefits on the strength of evidence of an unknown type and quality (*e.g.,* a Social Security award made two years later). Third, the argument that a Social Security award is determinative is a disguised attempt to reinject the "treating physician rule" into ERISA claims, contrary to the Supreme Court's holding in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Finally, the suggestion that plaintiff should recover fines for failure to receive her file from the Plan's administrator is unfounded. The record shows that she received a complete copy from MetLife, the claim administrator, in August 2005, and she admits that she received plan documents from Bank of America. Assuming (which defendants dispute) that failure to receive a claim file can trigger penalties, the file was received. Nothing in the statute suggests that serial demands for the same documents can render a plan administrator potentially liable for fines.

4.    **Motions:**

No motions are currently pending.

All parties anticipate filing a motion or motions for summary adjudication or summary judgment.

In the absence of any discovery disputes, and without waiving any party's right to bring such motions as it may deem appropriate, the parties do not anticipate any other motion practice in this case.

5.    **Amendment of Pleadings:**

At this juncture, the parties do not anticipate any need to amend their pleadings. However, if in the course of discovery, any party determines that such an amendment is

appropriate, the parties agree that any motion for leave to amend must be heard no later than 30 days prior to the dispositive motion cut-off date.

6.      **Evidence Preservation:**

MetLife has represented to Plaintiff's counsel that it optically scans all incoming and outgoing documents, and preserves all records.  Plaintiff's counsel has not demanded any special steps or procedures be taken to prevent destruction of relevant documents or other materials, but has requested Defense counsel ensure that such materials are preserved.  Plaintiff reserves the right to revisit the issue if it becomes necessary during discovery, or otherwise.

7.      **Disclosures:**

The parties have stipulated that initial disclosures pursuant to Fed. R. Civ. P. 26 will be served no later than August 14, 2008.

8.      **Discovery:**

No discovery has been taken to date.

Plaintiff's Statement:

Plaintiff intends to propound Requests for Admissions to BofA concerning Ms. Ramos' 502(c) claim, and concerning BofA's defenses and denials in its Answer.

Plaintiff intends to propound Requests for Admissions and Document Demands upon Defendant MetLife, reserves her right to propound interrogatories, and intends to conduct one or more depositions under Fed. R. Civ. P. 30(b)(6) concerning MetLife's handling of Ms. Ramos' disability claim, and its conflict of interest.[1]

Defendants' Statement:

Defendant Bank of America Group Benefits Program may propound interrogatories and/or Requests for Admission on Plaintiff regarding her 502(c) claim.

---

[1] The Supreme Court in *MetLife*, along with the Ninth Circuit in *Abatie*, mandate that trial courts must consider not merely the existence of a conflict of interest, but must further evaluate (and therefore allow discovery into) its magnitude and the extent to which that conflict had an effect on the conflicted fiduciaries' claims determination.  *See MetLife*, 128 S. Ct. at 2351; *Abatie*, 458 F.3d 955, 973.  Plaintiff disagrees with Defendants' interpretations of these cases, and further believes that Defendants' exposition of that interpretation in this Case Management Statement is not appropriate.

Following the Supreme Court's analysis of conflict of interest in *Glenn*, the "conflict" discovery that some district courts permitted following *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006), is not necessary or appropriate. *Glenn* established that a conflict of interest exists if the entity making claim decision is also the entity funding benefits. Because MetLife made the benefits decisions and funds benefits under the Plan, a conflict of interest exists and discovery into whether there was a conflict is moot.

Plaintiff is not entitled to discovery as to MetLife's handling of her claim. As noted, *Glenn* held that *de novo* review is not appropriate if a plan grants discretion to the claim administrator, and rejected "special procedural or evidentiary rules." *Glenn*, at 2350-51. Because this Court will weigh the evidence in the administrative record and the existence of the conflict of interest in determining whether MetLife's decision was an abuse of discretion, it is unnecessary for this Court to look outside the administrative record. No discovery is appropriate on the subject of claim handling, as plaintiff's own claim either was, or was not, properly resolved. Attempts to obtain discovery into the mental processes of the persons who analyzed the claim, much less attempts to obtain discovery about claims of others, sheds no light on that issue, but distracts from the issue. *See Semien v. Life Ins. Co. of North America*, 436 F.3d 805 (7th Cir. 2006). In *Taft*, *supra*, for example, the Ninth Circuit held that discretionary review of a benefit decision is limited to the evidence considered by the plan. *Id.* at 1471. This rule also precludes the admission of evidence about an award of Social Security benefits nearly two years after the decision on plaintiff's claim; not only was that information not presented to MetLife at the time of the decision on plaintiff's claim, but the decision on the Social Security claim was based upon plaintiff's condition at a time well after she stopped working – which, again, has no bearing on whether MetLife abused its discretion in reaching the decision it reached on the basis of the medical records provided to it. As the *Taft* court observed, permitting examination of evidence outside the administrative record opens the door to the anomalous conclusion that a fiduciary abused its discretion by failing to consider evidence not before it, which is inconsistent with public policy goals of ERISA. *Id.* at 1472. *See also McKenzie v. General Tel. Co.*, 41 F.3d 1310, 1314 (9th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995) [trial court erred in relying on

evidence never presented to the claim fiduciary, which was not in the administrative record but had been submitted directly to the court] *see also Alford v. DCH Found. Group Long-Term Disability Plan*, 311 F.3d 955, 959 (9th Cir. 2002) [documents neither "presented to" nor "considered by" fiduciary in reaching decision are not relevant to abuse of discretion].

9.      **Class Actions:**  N/A.

10.     **Related Cases:**  None

11.     **Relief:**

Plaintiff seeks the following relief:

(1) benefits under ERISA section 502(a)(1)(B), which, if awarded, the parties agree must be calculated pursuant to the language of the Plan.  The parties believe that the Plan prescribes that benefits be calculated as 50% of Ms. Ramos' ending monthly salary of approx. $3,500/month, less Ms. Ramos' Social Security Disability benefits actually received (currently approx. $1,300/month), running from June 2, 2005 until the earlier of her death, age 65 (June 3, 2023), or such time as she is no longer disabled; plus pre and post judgment interest.

(2) appropriate equitable relief, including an affirmative injunction and/or a declaration of her right to future benefits under ERISA section 502(a)(3), 28 U.S.C. section 1132 (a)(3);

(3) statutory penalties in the amount of $110.00 per day per document not provided within 30 days of Plaintiff's request for documents, pursuant to ERISA section 502(c), 29 U.S.C. section 1132(c), plus pre and post judgment interest; and

(4) attorneys' fees and costs pursuant to ERISA section 502(g), 29 U.S.C. section 1132(g).

Defendants reserve their right to seek attorney's fees and costs of suit under 29 U.S.C. § 1132.

12.     **Settlement and ADR:**

Plaintiff is willing to participate in an early settlement conference before a magistrate judge.  Plaintiff may be willing to submit the matter to private mediation at a later date, but does not believe that the cost is warranted in advance of conducting any discovery.

Defendants would prefer to mediate the case before a private mediator, but are willing to participate in an early settlement conference before a magistrate judge.

13.    **Consent to Magistrate Judge For All Purposes:**

All parties do not consent to have a magistrate judge conduct all further proceedings.

14.    **Other References:**

All parties agree that the case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.    **Narrowing of Issues:**

The parties are not aware at this time of any issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (*e.g.*, through summaries or stipulated facts), or any request to bifurcate issues, claims, or defenses.

16.    **Expedited Schedule:**

The parties do not believe that this is the type of case that can be handled on an expedited basis with streamlined procedures.

17.    **Scheduling:**

Designation of Experts (if any): the parties do not at this time anticipate the use of experts.  Defendants contend that, because the case will be decided on the administrative record, expert testimony is not admissible.

Discovery Cutoff: December 19, 2008

Last Date to Hear Dispositive Motions: February 25, 2009

Pretrial Conference:  If the Court mandates a pretrial conference, the Parties agree to a date of the Court's choosing.

Trial: April 6, 2009

18.    **Trial:**

The matter will be tried to the Court as a bench trial.

Plaintiff estimates the length of the trial to be two days, or less.

Defendants estimate that the trial will require not more than one-half day.

19.    **Disclosure of Non-party Interested Entities or Persons:**

1    <u>Plaintiff</u>:  Pursuant to Civil L.R. 3-16, the undersigned counsel for Plaintiff certifies that

2    as of this date, other than the named parties, there is no such interest to report.

3    <u>Defendants</u>:

4    Bank of America has filed a Certification of Non-party Interested Entities or Persons as

5    1) Bank of America Corporation, and 2) Bank of America, National Association.

6    Metropolitan Life Insurance Company has filed a Certification of Interested Parties or

7    Persons indicating that it knows of no such persons or entities, within the meaning of Local Rule

8    of Court 3-16, other than the parties to the litigation.

9    20.    **Such other matters as may facilitate the just, speedy and inexpensive disposition of**

10    **this matter.**

11    The parties know of no other such matters at this time.

12    Date:    July 24, 2008

13    LAW OFFICE OF JOSEPH A. GAROFOLO, P.C.          Sedgwick, Detert, Moran & Arnold LLP

14    THE LAW OFFICE OF JOSEPH A. CREITZ, P.C.        By_____/s/ Rebecca A. Hull_____
                                                       Rebecca A. Hull
15    By_____/s/ Joseph A. Creitz_____            Attorneys for Defendants
        Joseph A. Creitz                              Metropolitan Life Insurance Company and
16      Attorneys for Plaintiff Lena Ramos            Bank of America Long Term Disability Plan

17

18

19                                                    Patricia K. Gillette
                                                      Kristen M. Jacoby
20                                                    Orrick, Herrington & Sutcliffe LLP

21

22                                                    By /s/ Kristen M. Jacoby_____
                                                          Patricia K. Gillette
23                                                        Kristen M. Jacoby
                                                      Attorneys for Defendant
24                                                    Bank of America Group Benefits Program

25

26

27

28

11