UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LENA M. RAMOS,

    Plaintiff,                        No. C 08-1375 PJH

    v.                                **ORDER**

BANK OF AMERICA, et al.,

    Defendants.

_____/

Before the court is plaintiff's motion regarding the standard of review to be applied in this case. Having read the parties' papers and carefully considered their arguments, and the relevant legal authority, the court rules as follows.

**BACKGROUND**

This is an action brought under the Employment Retirement Income Security Act of 1874, 29 U.S.C. § 1001, et seq. ("ERISA"), alleging unlawful denial of long-term disability benefits. Plaintiff Lena Monzon Ramos was an employee of defendant Bank of America, and was a participant in the Bank of America Long Term Disability Benefits Plan.

Plaintiff alleges that she suffers from debilitating illnesses diagnosed as chronic asthma, congestive heart failure, mitral insufficiency, mitral stenosis, aortic insufficiency, and chronic migraine headaches. She asserts that as a result of these conditions she is fully disabled and unable to perform any of the functions of her prior job. Her last day of work at Bank of America was November 11, 2004.

In late 2004, plaintiff submitted a claim for short-term disability ("STD") benefits under the STD Plan administered by Bank of America. Her claim for STD benefits was approved

from November 19, 2004 through June 2, 2005 – the longest period allowable under the provisions of the STD Plan.  At some point, defendant Metropolitan Life Insurance Company ("MetLife") took over the administration of the STD Plan.

Meanwhile, MetLife had also issued Bank of America a group policy to fund benefits under the Bank of America Long Term Disability Benefits Plan, which was effective on January 1, 2003 ("the 2003 LTD Plan").  MetLife is also the claims administrator of the 2003 LTD Plan.  The 2003 LTD Plan provided that in the event of a Plan participant's "Disability" as defined in the Plan, MetLife would to pay a Monthly Benefit, following a 180-day Elimination Period, if the participant remained continuously "Disabled" throughout the Elimination Period.

The 2003 LTD Plan provided further that

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefit in accordance with the terms of the Plan.  Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

ADMIN0065.

In February 2005, plaintiff applied for long term disability benefits, based on the disability that had begun as of her last day of work, November 15, 2004.  ADMIN0309; ADMIN0348.  Based on the 2003 LTD Plan's 180-day elimination period, plaintiff could not qualify for LTD benefits unless she demonstrated a continuous "Disability," as defined in the Plan, from the date she last worked.

Plaintiff's claim was denied on March 23, 2005, for failure to provide proof of disability.  The denial letter cited the definition of "Disability" provided in the 2003 LTD Plan:

> "Disability" or "Disabled" means that, due to an Injury or Sickness, you require the Appropriate Care and Treatment of a Doctor, unless, in the opinion of a Doctor, future or continued treatment would be of no benefit and:
>
> 1. you are unable to perform each of the material duties of your own occupation; and
>
> 2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which

> you are reasonably qualified taking into consideration your training, education, experience and past earnings; or
>
> 3. you, while unable to perform all of the material duties of your own occupation on a full-time basis, are:
>
> > a. performing at least one of the material duties of your own occupation or any other gainful work or service on a part-time or full-time basis; and
> >
> > b. earning currently at least 40% less per month than your Indexed Basic Monthly Earnings due to that same injury or sickness.

The March 23, 2005 denial letter stated that plaintiff could appeal the decision by submitting a request for appeal to MetLife, along with a statement of the reasons she believed the claim was improperly denied, plus any additional comments, documents, records, or other information relating to her claim that she deemed appropriate for MetLife to give her appeal proper consideration.

Plaintiff submitted an appeal, but the claim was denied on June 20, 2005, on the basis that the medical documentation did not support the presence of a physical condition that would prevent plaintiff from engaging in her own occupation. The June 20, 2005 denial letter cited a portion of the 2003 LTD Plan's definition of "Disability," as follows:

> "Disability" or "Disabled" means that, due to an Injury or Sickness, you require the Appropriate Care and Treatment of a Doctor and
>
> 1. you are unable to perform each of the material duties of your own occupation
>
> 2. after the first 24 months of benefit payments, you must also be unable to perform each of the material duties of any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings.

Plaintiff filed this action on March 11, 2008. Defendants are MetLife, Bank of America Long Term Disability Plan, and Bank of America. Plaintiff alleges that defendants wrongfully denied her application for LTD benefits.

On September 2, 2009, plaintiff filed the present motion, arguing that the court should review the denial of her claim de novo, rather than for abuse of discretion. Plaintiff asserts that the applicable LTD plan is the Bank of America Long Term Disability Benefits Plan that

was effective on January 1, 2005 (the "2005 LTD Plan"). The 2005 LTD Plan defines "Disability" as follows:

> "Disabled" or "Disability" means that, due to sickness, pregnancy or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis unless, in the opinion of a Doctor, future or continued treatment would be of no benefit; and
>
> 1. During the first 24 months, including your Elimination Period, you are unable to earn more than 80% of your Predisability Earnings or Indexed Predisability Earnings of your Own Occupation for any employer in your Local Economy; or
>
> 2. after the first 24 month period, you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonably qualified taking into account your training, education and Predisability Earnings.

Plaintiff argues that MetLife improperly denied plaintiff's claim based, not on the language of the 2005 LTD Plan (above), but on the "more onerous definition of disability" contained in the 2003 LTD Plan.

**DISCUSSION**

A.   Legal Standard

De novo review is the default standard of review in cases challenging denial of claims for benefits under ERISA plans. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). However, where the Plan documents confer discretion on the Plan administrator to construe or interpret the Plan, the administrator's decision is reviewed instead for abuse of discretion. "[F]or a Plan to alter the standard of review from the default of de novo to the more lenient abuse of discretion, the Plan must unambiguously provide discretion to the administrator." Id. at 964.

B.   Plaintiff's Motion

Plaintiff does not dispute that the Plan (whether 2003 or 2005) confers discretionary authority on MetLife to interpret the language of the Plan. Plaintiff argues, however, that participants and beneficiaries are entitled to have the correct plan language applied to their claims. She contends that because MetLife failed to exercise its fiduciary prerogative to interpret or construe the 2005 LTD Plan – relying instead on the language of the 2003 LTD

4

Plan – there is no interpretation to which the court can defer. Thus, plaintiff asserts, the court should review her claim for LTD benefits de novo.

In opposition, MetLife asserts that the Plan terms that were in effect as of the date of plaintiff's alleged disability – which according to plaintiff began on November 15, 2004 – were the terms of the 2003 LTD Plan. For that reason, the definition of "Disability" quoted in the two denial letters was the definition provided in the 2003 Plan.

MetLife asserts that the Plan that plaintiff argues should have been applied by MetLife – the 2005 LTD Plan – was never applicable to her, as it provides that an employee "must be actively at work the day the coverage becomes effective [i.e., January 1, 2005]" or, [i]f . . . not actively at work on the day the coverage became effective, then coverage becomes effective on the date [the employee] return[s] to active work." Because plaintiff has not been "actively at work" since November 15, 2004, MetLife argues, the 2005 LTD Plan does not apply to her.

In reply, plaintiff asserts that the evidence indicates that MetLife administered the STD Plan under the 2005 LTD Plan. Plaintiff contends, therefore, that her LTD claim must also be administered under the 2005 LTD Plan. She argues further that because MetLife has refused to produce the administrative record of her STD claim, the court may infer that the records would show that her STD claim was administered by MetLife under the 2005 LTD Plan; and that the court must therefore conclude that MetLife has engaged in "administrative malfeasance."

Plaintiff relies on Abatie, where the Ninth Circuit observed that certain procedural violations may be so egregious as to constitute a failure to exercise discretion. See Abatie, 458 F.3d at 971. The court noted that ordinarily, such procedural violations will not alter the standard of review, but concluded that they may do so when the violations are "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantial harm." Id. "When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well, we review de novo the

administrator's decision to deny benefits." Id.

The court found procedural irregularity based on the fact that the claims administrator had originally denied the claim for life insurance benefits for one reason, but in the final decision following the appeal, added a second reason, thereby precluding the participant from responding to that reason for denial at the administrative level. Id. at 973-74. The court held that the district court should have allowed the participant to submit additional evidence in the civil action to rebut the second reason that had been articulated by the claims administrator only in its final decision. Id. at 974. The court remanded the case, so that the district court could consider the additional evidence.[1]

Here, while it is not entirely clear from the papers, it appears that plaintiff seeks the change in the standard of review because she intends to argue that there was sufficient evidence in her STD claim file to satisfy the requirements of the definition of "Disability" in the LTD policies, and possibly, that she should be permitted to submit that additional evidence to the court to show that her claim should not have been denied.

The court is not persuaded, however, that any of the alleged procedural irregularities cited by plaintiff rise to the level of "wholesale and flagrant violations of the procedural requirements of ERISA," id. at 971, such that the standard of review should be altered from abuse of discretion to de novo. Nor does the court agree with plaintiff that the evidence shows that MetLife should have considered plaintiff's claim for LTD benefits under the 2005 LTD Plan. At most, plaintiff has raised issues that might better be raised in a motion for summary judgment, in connection with an argument regarding the weight the court should give an alleged conflict of interest, and the level of scrutiny the court should apply in reviewing the denial under the abuse of discretion standard.

Finally, in the conclusion of her reply brief, plaintiff asserts that MetLife submitted documents with its opposition that it had previously withheld in this litigation, and that those documents should be stricken. MetLife states in its opposition to the "motion to strike" that

---

[1] The Ninth Circuit did not, however, direct that the district court review the denial de novo.

6

the three pages to which plaintiff objects are the back sides of three two-sided pages from the January 1, 2003 certificate of insurance of the LTD policy issued by MetLife to Bank of America, and that the three pages were inadvertently not copied when MetLife provided its initial disclosures in August 2008.  When informed of this error on September 21, 2009, MetLife's counsel advised plaintiff's counsel that it had been a copying error, and that the missing pages would be provided.[2]  The court finds no cause to strike the three pages.

## CONCLUSION

In accordance with the foregoing, plaintiff's motion for de novo review is DENIED. The parties shall meet and confer within two weeks of the date of this order, and submit a stipulation as to a briefing schedule for dispositive motions.

**IT IS SO ORDERED.**

Dated:  January 29, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[2]  However, the missing pages had already been filed on September 16, 2009, as part of MetLife's opposition to the motion

7